UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HARRY RANDOLPH** | **CASE NO. 2:17-CV-00355** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LARRY AMOS ET AL.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court are several Motions to Dismiss [docs. 58, 59, 61, 63, 66] filed by defendants in this matter in response to the Amended Complaint [doc. 55] filed by plaintiff Harry Randolph. Randolph has filed no opposition to the motions and his time for doing so has passed.

### I.
### BACKGROUND

This suit arises from Randolph's arrest following a traffic stop conducted by officers of the Oakdale Police Department. Randolph alleges as follows: On the evening of March 7, 2016, he was a rear seat passenger in a vehicle owned by someone else that was stopped due to lack of visible tail lights in Oakdale, Louisiana, by Officer Larry Amos. Doc. 55, p. 3. Amos questioned the driver about the traffic violation, had the occupants exit the vehicle, and ran a warrant check on Randolph, which came back clean. *Id.* at 4. Nevertheless, Officers Brandon Johnson and Ben Perkins arrived a short time later and began questioning each vehicle occupant individually about other crimes, though Randolph had not been read his *Miranda* rights or told the reason for the stop. *Id.* They also took Randolph to the rear

of the vehicle and, without provocation, slammed him into it. *Id.* Randolph alleges that he only held onto the vehicle to keep from falling to the ground and did not resist the officers, but that they proceeded to tackle him, spray him with pepper spray, and shock him multiple times with a taser gun. *Id.* at 5. After he was handcuffed, Randolph asserted, Officer Johnson lifted him by the hair and punched him multiple times in the face. *Id.* Suffering from his injuries, including two broken ribs, Randolph was taken to the jail and left on the floor of his cell. *Id.* No mugshot was taken and he did not receive medical attention until he was released five days later, with only a possession of marijuana charge. *Id.* at 6, 11.

Randolph further alleges that the officers falsified the police report by claiming that they had seen a bag of marijuana in his mouth, which he purportedly destroyed by flushing down the toilet in his cell, and that he had resisted arrest against three officers by wrestling them all into a ditch. *Id.* at 7. Randolph was subsequently charged with resisting arrest, possession of cocaine, and destruction of evidence as well. *Id.* at 9. While those charges were still pending, he filed a civil rights suit in this court under federal and state law against the City of Oakdale, Officers Amos, Johnson, and Perkins, Oakdale Police Chief William Henry Bishop in his official capacity, Allen Parish Sheriff Doug Hebert in his official capacity, Oakdale Mayor Gene Paul, and Allen Parish District Attorney Todd Nesom in his official capacity. Doc. 1. Proceedings were stayed pending a resolution of the criminal case, which resulted in Randolph's conviction of one count of resisting an officer and a ten-day suspended jail sentence. Doc. 13; doc. 66, att. 3. When the stay was lifted, defendants filed motions to dismiss and Randolph filed an amended complaint in response. *See* docs. 45–49, 55.

Defendants have now filed several motions to dismiss in response to the amended complaint, asserting as follows: (1) Randolph cannot state a claim for punitive damages under federal or state law [doc. 58]; (2) the Oakdale Police Department lacks the capacity to be sued [doc. 59]; (3) claims against Oakdale Mayor Gene Paul are duplicative of claims against the city [doc. 61]; (4) claims against Oakdale Police Chief Bishop should be dismissed because he was not mayor at the time of the incident and because these claims are duplicative of those against the police department [doc. 63]; and (5) Randolph's civil rights claims fail under substantive state and federal law [docs. 66].[1] Randolph has filed no opposition to the motions within the time set forth by court order and the motions are therefore regarded as unopposed.

## II.
## LAW & APPLICATION

### A. Legal Standards

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

---

[1] Officers Amos and Johnson have also filed a motion to dismiss for improper service and failure to state a claim, which will be handled by separate ruling. *See* doc. 69.

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

#### 1. Punitive damages

In the first motion to dismiss, the defendants argue that Randolph has not stated a claim for punitive damages under state or federal law. Doc. 58. Under Louisiana state law, punitive damages are only permitted in a civil case where specifically authorized by statute. *Ross v. Conoco, Inc.*, 828 So.2d 546, 555 (La. 2002). Randolph has not alleged that any defendant committed an act that would expose it to liability for punitive damages under Louisiana law, and so the motion should be granted in this regard.

As for the claims under federal law, punitive damages are not recoverable under 42 U.S.C. § 1983 against a municipality.[2] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-71 (1981). A § 1983 claim against an officer in his official capacity is regarded as a claim against the government entity. *Burge v. Parish of St. Tammany*, 187 F.3d 452,

---

[2] A § 1983 claim against a Louisiana sheriff in his official capacity is regarded as a suit against a municipality. *Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005))

468 (5th Cir. 1999). Accordingly, punitive damages are only recoverable under 42 U.S.C. § 1983 against defendants sued in their individual capacities. *E.g.*, *Stern v. Hinds Cnty, Miss.*, 436 F. App'x 381, 382 (5th Cir. 2011); *Mitchell v. City of New Orleans*, 184 F.Supp.3d 360, 378 (E.D. La. 2016). Against such individuals, a plaintiff may recover punitive damages if he shows that the officers "acted with malicious or evil intent or callous disregard of the plaintiff's federally protected rights." *Gill v. Devlin*, 867 F.Supp.2d 849, 857 (N.D. Tex. 2012). Though the defendants pray for a general dismissal of the claims for punitive damages, they do not address those arising from individual capacity claims against the officers. The motion will be denied in this regard but granted in all other respects.

### 2. Claims against Oakdale Police Department

The next motion concerns the Oakdale Police Department's capacity to be sued. This capacity is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b). According to the Louisiana Supreme Court, the determination of whether an entity can be sued rests "on an analysis of specifically what the entity is legally empowered to do," and in particular whether it has "the legal capacity to function independently and not just as the agency or division of another governmental entity." *Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So.2d 341, 346–47 (La. 1994). Under these standards, police departments generally lack the capacity to be sued. *LaMartina-Howell v. St. Tammany Par. Sch. Bd.*, 2009 WL 3837323, at *2 (E.D. La. Nov. 12, 2009) (collecting cases). Another division of this court has made the same determination as to the Oakdale Police Department and plaintiff presents no argument or authority in opposition. *Steele v.*

*Police Dep't of Oakdale*, 2010 WL 816177, at *3–*4 (W.D. La. Mar. 9, 2010). Accordingly, this motion will be granted.

### 3. Claims against Mayor

The next motion asserts that the claims against Oakdale Mayor Gene Paul should be dismissed because they are duplicative of the claims brought against the city. As noted above, a § 1983 claim against an officer in his official capacity is regarded as a claim against the government entity. *Burge*, 187 F.3d at 468. There are no allegations against Paul individually and § 1983 does not give rise to vicarious liability. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380–81 (5th Cir. 2005) (citing *Canton v. Harris*, 489 U.S. 378, 385 (1989)). Additionally, to the extent any claim of vicarious liability is intended under state law to the employers of the police officers, it appears that these are directed at the police chief/department and the city itself. Accordingly, this motion will be granted.

### 4. Claims against police chief

The next motion concerns the claims against former Oakdale Police Chief William Henry Bishop, who was named in his official capacity as well as under the state law claims. Doc. 55. Bishop argues that the claims against him must be dismissed because (1) they are duplicative of claims against the department or city and (2) he was not the police chief at the time of the complained-of incident. For the § 1983 claims, the court agrees that the claims against Bishop in his official capacity are duplicative of those against the city. Randolph has also alleged a failure to train, which would give rise to individual liability against a police chief under state law and § 1983. *See Davis ex rel. McCully*, 406 F.3d at

381. But such claims require a heightened pleading standard, beyond conclusory allegations of inadequate training, to overcome the federal bar on *respondeat superior* liability and the state immunity provided for discretionary acts of public officials under Louisiana Revised Statute 9:2798.1. *See Ard v. Skinner*, __ F.Supp.3d ___, 2021 WL 388830 (M.D. La. Feb. 3, 2021). Here, despite a prior opportunity to amend, plaintiff only generally alleges that the defendants "intentionally retained poorly trained officer[s] who had inability to refrain from imposing personal revenge or in fact the unspoken policy of the City of Oakdale, Police Chief of vigilante style arrests." Doc. 55, pp. 13–14. No specific allegations are made as to the training or hiring practices, such as failure to conduct background checks or investigate misconduct complaints. Additionally, as public election records show, the chief of police from 2008 to 2016 was Scotty Laborde, and from 2016 onward the office has been filled by Joseph Lockett. Doc. 63, att. 3. Accordingly, there is no basis for any claim against Bishop or against the Oakdale Police Chief in his official or individual capacity and this motion should be granted.

5. **City's motion**

The City of Oakdale argues under its motion that the claims against it must be dismissed on the merits, because (1) the claims for false arrest and imprisonment are barred under federal law by *Heck v. Humphrey* and fail to show a claim for relief under state law; (2) Randolph fails to state a valid claim under the Fifth or First Amendment; (3) Randolph fails to state a claim under 42 U.S.C. § 1981; and (4) Randolph fails to state a claim for municipal liability under *Monell v. Department of Social Services of the City of New York*. Doc. 66.

### a. *Heck* bar

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a plaintiff could not recover damages for an allegedly unconstitutional arrest or conviction, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless he first showed that an authorized tribunal or executive body has overturned or otherwise invalidated his conviction. *Id.* at 486–87. Here the plaintiff has raised claims of unconstitutional false arrest and imprisonment under 42 U.S.C. § 1983. As defendants have shown however, he was subsequently convicted by a "no interest" plea to one count of resisting an officer.[3] Doc. 66, att. 3. Accordingly, the federal claims for false arrest and imprisonment are barred under *Heck* and the motion will be granted in this regard.

As for the state law false arrest/imprisonment claims, a plaintiff must show that the arrest was unlawful and that it resulted in injury. *Landry v. Duncan*, 902 So.2d 1098, 1102 (La. Ct. App. 5th Cir. 2005). If police officers act pursuant to their statutory authority in arresting and incarcerating an individual, then there is no liability. *Dyas v. Shreveport Police Dep't*, 136 So.3d 897, 902–03 (La. Ct. App. 2d Cir. 2014) (citing *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977)). Accordingly, there is no liability when a person is arrested or imprisoned upon a determination of probable cause that he has committed a crime. *Id.* Probable cause is "conclusively proven by [the plaintiff's] indictment and conviction in [a] criminal case." *Gibson v. Louisiana*, 758 So.2d 782, 790–91 (La. 2000).

---

[3] Randolph attempted to withdraw his plea, but the motion was denied and his application for supervisory writs was denied by the Louisiana Third Circuit Court of Appeal. Doc. 66, att. 3. His time for seeking review in the Louisiana Supreme Court has passed and the conviction is therefore final. *See id.*

Page **8** of **12**

Because Randolph was subsequently convicted of one of the crimes in the amended charge, his tort claims for false arrest and imprisonment also fail as a matter of law. This determination inures to the benefit of all defendants, including the arresting officers.

### b. First and Fifth Amendment claims

Randolph has also alleged that his right to due process under the Fifth and Fourteenth Amendments and free speech/assembly under the First Amendment were violated. As to the Fifth Amendment claims, the city contends that they are not viable because that amendment applies only to the federal government. "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F.Supp.2d 605, 631 (W.D. La. 2013) (quoting *Dusenbery v. U.S.,* 534 U.S. 161, 167 (2002)). There is no dispute that all defendants in this matter are state, rather than federal, actors. Accordingly, Randolph has no plausible § 1983 claim based on a violation of Fifth Amendment rights but his Fourteenth Amendment claims are still viable under this argument. As to the City of Oakdale, however, Randolph fails to allege how that entity violated his right to due process beyond the *Heck*-barred claims described above and so any Fourteenth Amendment claim must also be dismissed.

The First Amendment, on the other hand, does apply to state actors as a result of its incorporation through the Fourteenth Amendment. *See, e.g.*, *Manhattan Community Access Corp. v. Halleck*, __ U.S. __, 139 S.Ct. 1921, 1928 (2019). But Randolph provides no

allegation showing how his rights of speech, petition, assembly, or religion were limited by any defendant. Accordingly, this claim fails as a matter of law as to all defendants.

### c. Claims under 42 U.S.C. § 1981

Randolph has also generally asserted that the defendants are liable to him under 42 U.S.C. § 1981. That statute provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Randolph makes no allegations pointing to racial discrimination. Accordingly, this claim fails as a matter of law as to all defendants.

### d. Municipal liability and remaining claims

The Supreme Court set forth the elements of municipal liability under § 1983 in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A successful claim requires proof of the following: a policymaker, an official policy, and a constitutional violation whose "moving force" is the policy or custom. *Id.* at 694. Because municipal liability cannot be predicated on a theory of *respondeat superior*, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur [and] isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Randolph only alleges generally that the officers were acting pursuant to city policies and that there was an "unspoken policy" of "vigilante style arrests." Doc. 55, pp.

14–15. As the Fifth Circuit has emphasized, "[a] policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority' over the subject matter of the offending policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotations omitted). An unwritten rule may rise to this level when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579. However, Randolph's municipal liability claim is based on a single incident. He does not identify any other municipal acts or omissions that would support the city's liability for his arrest. Accordingly, he fails to state a claim for municipal liability. As for any claims based on state law for the city's negligent hiring and training of officers, as described above, Randolph fails to provide sufficient allegations in support of such a claim. The remaining claims against the city should therefore be dismissed.

## III.
### CONCLUSION

For the reasons stated above, the defendants' Motion to Dismiss [doc. 58] will be **GRANTED IN PART AND DENIED IN PART**, resulting in the **DISMISSAL WITH PREJUDICE** of the claims for punitive damages against all defendants except those arising from individual capacity claims. The Motions to Dismiss [docs. 59, 61, 63] filed by the Oakdale Police Department, Gene Paul, and William Henry Bishop, respectively, will be **GRANTED**, resulting in the **DISMISSAL WITH PREJUDICE** of all claims against those defendants. Finally, the Motion to Dismiss [doc. 66] filed by the City of Oakdale will

be **GRANTED**, resulting in the **DISMISSAL WITH PREJUDICE** of all claims against the City of Oakdale.

    **THUS DONE AND SIGNED** in Chambers on this 10th day of August, 2021.

                      **JAMES D. CAIN, JR.**
                **UNITED STATES DISTRICT JUDGE**